## Maddox v. Thrift Realty Mortgage Co. et al.

(Decided Dec. 18, 1936.)

BURWELL K. MARSHALL for appellant.

M. L. MARSHALL and J. D. INMAN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

The Thrift Realty Mortgage Company has recovered judgment against W. C. Maddox for $800 with interest from February 18, 1928, subject to various credits aggregating $200, and he is appealing.

Briefly stated, the facts out of which the litigation grew are that on December 24, 1927, Lula Hart and William Hart, in order to secure the payment of a note for $2,250, executed and delivered to the Kentucky Title Trust Company a mortgage on a lot which they owned in Louisville abutting on Southern avenue and 21st street. On January 18, 1928, the Harts conveyed the property to Arch Stallard and Irma M. Stallard. On November 30, 1928, the Stallards conveyed the prop-

erty to Bessie Hardy who on March 4, 1929, conveyed it to W. L. McCarley and Lizzie Stewart. They on May 27, 1929, conveyed to J. E. Jones and wife, who on July 27, 1929, conveyed it to W. C. Maddox and on June 13, 1930, W. C. Maddox and wife, by T. G. Maddox, attorney in fact, conveyed the property to Katherine N. Maddox, wife of T. G. Maddox. In each of these conveyances it was provided that as a part of the consideration the grantee or grantees assumed the payment of the balance due on the mortgage to the Kentucky Title Trust Company. In the deed from the Harts to the Stallards the grantees as a part of the consideration executed and delivered to Roy A. Cochran their note for $800 bearing even date with the deed and a lien was retained on the property conveyed to secure the payment of the note and the grantees in all subsequent conveyances hereinbefore mentioned, as a part of the consideration, also assumed the payment of the balance due on this note.

On January 19, 1928, Roy A. Cochran assigned the $800 note to the Thrift Realty Mortgage Company and this was evidenced by a written assignment on the margin of the deed.

In May, 1931, the Kentucky Title Trust Company filed its petition in equity against the Harts, the Thrift Realty Mortgage Company, and all the grantees in the aforementioned conveyances, except W. C. Maddox, seeking to recover the balance due on the note and the enforcement of its mortgage.

In October, 1931, the defendant Thrift Realty Mortgage Company filed its answer which it made a cross-petition against the Harts and all their immediate and remote vendees, including W. C. Maddox, in which it set up the foregoing facts concerning the several conveyances of the property, the execution of the mortgage and lien note, and the assignment of the lien note to it, and asked for judgment against Katherine Maddox, W. L. McCarley, Lizzie Jones, J. E. Jones, Myrtle Jones, Irma M. Stallard, W. C. Maddox, Annie C. Maddox, and Bessie Hardy for the balance due on its lien note, and that it be adjudged a lien on the property described in the conveyances superior to all liens except that of the mortgage lien of the Kentucky Title Trust Company and for the enforcement of such lien.

W. C. Maddox filed answer and counterclaim to the

cross-petition of the Thrift Realty Mortgage Company which he made a cross-petition against T. G. Maddox and all other defendants in plaintiff's petition in which he made a general denial of the allegations of the cross-petition of the Thrift Realty Mortgage Company and specifically denied that he in the deed of date July 27, 1929, referred to, or at any time by deed or otherwise assumed or agreed to pay the unpaid balance or any mortgage against the property described in the pleading and conveyances or any note or notes to the Thrift Realty Mortgage Company. In a second paragraph he alleged that on or about July 25, 1929, his brother, T. G. Maddox, approached him and requested permission to deed to him several lots or pieces of real estate in Jefferson county to hold title for T. G. Maddox and that it was agreed between them that he should not be obligated in any manner for any indebtedness of T. G. Maddox and he assumed no obligation for property so conveyed, but that title to the property was taken as a mere accommodation to T. G. Maddox; and that in accordance with such request and without any consideration from one to the other, he gave his consent to such conveyances, solely for the purposes indicated. He further alleged that T. G. Maddox, or his attorney, fraudulently prepared and had the deed from J. E. Jones and others to be executed, wherein and whereby they conveyed the property to him with the provision and condition that he as part of the consideration assume the balance on the mortgage and vendor's lien; that the deed was made without knowledge on his part that it contained such assumption agreement; that the deed was put to record by T. G. Maddox or his agent without any notice to him that it contained such agreement; that he never recognized any obligation under the conveyance and never received any profit therefrom or exercised any control over the property and received no consideration from T. G. Maddox or from J. E. Jones or the other grantors for the purported assumption of the liens against the property; that subsequent to July 27, 1929, at the request of T. G. Maddox, he and his wife executed and delivered to T. G. Maddox a power of attorney, whereby the latter was authorized to convey the aforementioned lots as set out in the deed of July 27, 1929, which power of attorney was put to record in the county court clerk's office; that the power of attorney was given with the understanding that he was not to be

obligated in any way and without knowledge of what the deed from J. E. Jones and others to him actually contained, and that the action of T. G. Maddox in placing the assumption provision in the deed was a fraud perpetrated upon him by T. G. Maddox; that under the power of attorney T. G. Maddox conveyed the property to Katherine Maddox without advising him; and that he knew nothing of the conveyance until same was called to his attention in this action. He asked that the deed be reformed by striking out that part relating to the assumption of the mortgage and vendor's lien by him and that he be adjudged not to be indebted to the Thrift Realty Mortgage Company or to any of the cross-defendants or to any person or persons by reason of the execution of the deed from the Jones and others to him and that he recover judgment against Katherine Maddox and T. G. Maddox for any sum that might be recovered against him by reason of the purported assumption of such liens by him.

On December 19, 1931, judgment was rendered for the balance due on the mortgage note of the Kentucky Title Trust Company and the property described in the mortgage was directed to be sold for the purpose of satisfying the lien indebtedness and that the lien of the Thrift Realty Mortgage Company be transferred to the surplus proceeds of the sale after satisfying the mortgage of the Kentucky Title Trust Company. The amount realized from the sale of the property by the commissioner was not sufficient to satisfy the Kentucky Title Trust Company's debt, interest, and costs.

The cause proceeded through a veritable wilderness of pleadings, demurrers, motions, and orders until the judgment appealed from was rendered on December 7, 1934.

W. C. Maddox filed an amended and second amended answer, counterclaim, and cross-petition which in effect reiterated the allegations of his original pleading, but he did more specifically allege that T. G. Maddox or his attorney prepared a written power of attorney which fraudulently included among the descriptions of real estate therein the property described in the pleadings and exhibits which had been conveyed to him by J. E. Jones and others; that the power of attorney fully described the property, but did not disclose that the conveyance had been made to him; that he did not then

or at any time know of the conveyance by Jones and others to him and did not approve of, ratify, or accept same; and that such conveyance was a fraud upon him and without his knowledge or consent and as soon as he discovered that the power of attorney included the property in question and that same had been conveyed to him by J. E. Jones and others he made and filed a written revocation of the power of attorney in the county court clerk's office.

By reply and amended reply the affirmative allegations of W. C. Maddox's amended pleadings were traversed and it was affirmatively pleaded that by his course of conduct and dealings with his brother T. G. Maddox, without any notice to or knowledge of other parties to the transactions of the conditions or restrictions pleaded, W. C. Maddox was estopped to rely upon any secret agreement or understanding with his brother or to plead same in avoidance of the assumption agreement in the conveyance to him.

The issues were completed by rejoinder traversing the allegations of the reply as amended. On June 23, 1934, the cause was submitted to the chancellor upon demurrer of the Thrift Realty Mortgage Company and J. E. Jones and wife to the answer, counterclaim, and cross-petition of W. C. Maddox as amended.

The chancellor, after a recitation of the facts, said in effect that W. C. Maddox was seeking to avoid payment of the obligation which it was recited in the deed he assumed on the theory that T. G. Maddox fraudulently accepted for him and caused to be recorded the deed containing the assumption agreement; and further fraudulently included in the power of attorney which he executed a description of the property conveyed to him by Jones and others, and that W. C. Maddox did not agree with T. G. Maddox that he would assume such obligation and that he never ratified or approved the conveyance, but when he discovered the fraud revoked the power of attorney. He adopted the part of the opinion of a former chancellor, Judge Allen, in passing on the sufficiency of the pleadings, wherein it was said:

"As has been pointed out, any agreement between the Maddox brothers or any fraud practiced by T. G. Maddox on his brother is not available as

a defense, unless Jones and Stewart knew of and acquiesced in the agreement or participated in the fraud. There is no allegation that they knew of or acquiesced in the arrangement between the Maddox brothers. The only allegations contained in the answer, counterclaim, and cross-petition of W. C. Maddox which can affect his liability to Jones and Stewart are that he never agreed with any one to pay the outstanding mortgages; that he did not know, until he was sued in this action, that the deed from Jones and Stewart contained an assumption clause, that he never accepted said deed or recognized any obligation thereunder. This must, I think, be taken as an allegation that W. C. Maddox never agreed with Jones and Stewart that he would assume the mortgages for which they were liable and that Jones and Stewart inserted in the deed the assumption clause without his knowledge and consent. If he can prove this, then he is not liable to Jones and Stewart and consequently not liable to the mortgagee.''

He sustained demurrers, but stated that he would go as far as Judge Allen in the above-quoted excerpt and would permit W. C. Maddox to take proof to establish the allegations of his pleading as indicated therein; and the cause was referred to the official stenographer ''to take proof in support of the implied allegations of fraud as herein construed.''

Without any proof being taken, the cause was submitted for judgment and the judgment appealed from rendered. In the judgment it was recited that W. C. Maddox declined to adopt the suggestions contained in the memorandum opinions relating to the taking of proof and declined to plead further.

Counsel for appellant has filed a scholarly brief with extensive citation and review of authorities. At the outset it is argued that the chancellor who sustained the demurrer and rendered the judgment appealed from in following a former chancellor's opinion which was rendered before appellant filed his amended pleading apparently entirely overlooked the allegations made in the amended pleading to conform to the former chancellor's opinion.

We have carefully considered the amended plead-

ings and find as above indicated that they merely state with probably more clarity and emphasis the defenses attempted to be set up in the original pleading. There is no allegation that appellant's vendors participated in or had any notice or knowledge of the alleged fraud, or of any understanding between appellant and his brother that appellant would not incur any liability under or by reason of conveyances made to him pursuant to their agreement. It is our view that the former chancellor in the quoted portion of his opinion correctly applied the controlling rules of law and equity to the facts and circumstances then existing, and the situation has not been changed by the amended pleadings.

It is stated by his attorney in the brief that appellant has been a successful business man and is a man of affairs. It is further stated that T. G. Maddox has for some years been engaged in real estate business and has acquired many of the tricks not to mention dishonest practices of that profession. It is apparent that for some reason T. G. Maddox did not desire to have the title to the real estate in his name. Whatever his motives were, they must have been known to appellant and he was willing to be used as an instrument for their furtherance. He agreed that his brother should make conveyances to him and under the agreement a number of pieces of property were conveyed. If any fraud was perpetrated by T. G. Maddox, appellant, by his course of conduct and dealing with his brother, made it possible. On the face of the record appellant in the conveyance from the Jones and others assumed the payment of the note to Cochran which has been assigned and transferred to the Thrift Realty Mortgage Company and under the pleading the burden of establishing the alleged fraud was upon him. Goerter v. Shapiro, 254 Ky. 701, 72 S. W. (2d) 444; Rice v. Hord, 252 Ky. 469, 67 S. W. (2d) 715.

In the circumstances it would seem unnecessary to enter into further discussion of the pleadings or the authorities relied on by appellant. On demurrer pleadings are strictly construed against the pleader, however, chancellors who had the case under consideration gave appellant the benefit of all doubt and afforded him opportunity to take proof to establish any defenses as against his grantors and the holder of the vendor's lien

note, but months later and without taking proof, he permitted the case to be submitted for judgment on the pleadings and exhibits. In such circumstances, it follows from what we have said that the chancellor's finding is correct.

Judgment affirmed.